1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10    ALLEN K. WARE,

11                 Petitioner,                    No. CIV S-10-1749 GEB EFB P

12         vs.

13    GARY SWARTHOUT,

14                 Respondent.              FINDINGS AND RECOMMENDATIONS

15    _____/

16         Petitioner is a state prisoner proceeding *in propria persona* with a petition for a writ of

17    habeas corpus pursuant to 28 U.S.C. § 2254.  He challenges the decision of the California Board

18    of Parole Hearings (hereinafter "Board") to deny him parole at a parole consideration hearing

19    held on October 16, 2008.  He claims that the Board's 2008 decision finding him unsuitable for

20    parole violates his federal right to due process and the Ex Post Facto Clause.

21         As discussed below, the United States Supreme Court has held that the only inquiry on

22    federal habeas review of a denial of parole is whether the petitioner has received "fair

23    procedures" for vindication of the liberty interest in parole given by the state.  *Swarthout v.*

24    *Cooke*, 562 U.S. ___, No. 10-333, 2011 WL 197627, at *2 (Jan. 24, 2011) (per curiam).  In the

25    context of a California parole suitability hearing, a petitioner receives adequate process when

26    he/she is allowed an opportunity to be heard and a statement of the reasons why parole was

1

denied.  *Id.* at **2-3 (federal due process satisfied where petitioners were "allowed to speak at their parole hearings and to contest the evidence against them, were afforded access to their records in advance, and were notified as to the reasons why parole was denied"); *see also Greenholtz v. Inmates of Neb. Penal*, 442 U.S. 1, 16 (1979).  For the reasons that follow, applying this standard here requires that the petition for writ of habeas corpus be denied on petitioner's due process claim.

**I.  Procedural Background**

Petitioner is confined pursuant to a 1976 judgment of conviction entered against him in the Los Angeles County Superior Court following his conviction on charges of first degree murder, burglary, and possession of marijuana for sale.  Pet. at 19.[1]  Pursuant to that conviction, petitioner was sentenced to seven years to life in state prison.  *Id.* at 1.

Petitioner was found suitable for parole in 1984, but his parole was later rescinded.  Pet., Ex. F.  The facts surrounding these matters were set forth in a previous habeas corpus action filed by petitioner in this court, as follows:

> Petitioner is currently serving a sentence of life with the possibility of parole for first degree murder and first degree burglary.  He began his term of incarceration on December 28, 1976.  At that time, petitioner's minimum eligible parole date (MEPD) was calculated to be June 27, 1983.  In 1982, an initial parole hearing was held.  Petitioner was placed on the calendar for a parole suitability hearing.  In June 1983, the state held the scheduled hearing.  Petitioner was denied parole.  On May 10, 1984, petitioner received another parole hearing.  After that hearing, the BPT granted petitioner parole and set his term of incarceration at 174 months.  This date was later advanced to October 23, 1987.

> On October 30, 1986, petitioner was issued a rules violation report for possession of seven hundred dollars.  He was subsequently found guilty of a "serious" rules violation based on his admission of guilt.  Petitioner admitted that he had the money and stated that he planned to give it to his wife.

////

---

[1]  Page number citations such as these are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

On April 21, 1987, the state held a hearing to determine whether petitioner's disciplinary violation was sufficient cause for rescission of petitioner's parole date.  Petitioner appeared voluntarily without the presence of retained counsel.  Petitioner admitted that he possessed the money, but stated that his mother had sent it to him through the mail and that he intended to give it to his wife.  The hearing panel determined that petitioner's testimony did not appear credible, that petitioner had a history of "drug sales," and that, although the acquisition of the currency was "still somewhat of a mystery," rescission of petitioner's parole date was "more than warranted on the facts of this case."

Case No. CIV S-98-0752 GEB JFM P, Dckt. No. 11, at 2.[2]  Petitioner has apparently not been found suitable for parole since 1987.

The parole consideration hearing that is placed at issue by the instant petition was held on October 16, 2008.  Pet. at 59.  Petitioner appeared at and participated in the hearing.  *Id.* at 61-142.  Following deliberations held at the conclusion of the hearing, the Board panel announced their decision to deny petitioner parole for two years and the reasons for that decision.  *Id.* at 143-52.

Petitioner challenged the Board's 2008 decision in a petition for writ of habeas corpus filed in the Los Angeles County Superior Court.  Answer, Ex. 1.  The Superior Court denied that petition in a decision on the merits of petitioner's due process claim.  *Id.*, Ex. 2.  The Superior Court did not address petitioner's ex post facto claim.  *Id.*  Petitioner subsequently challenged the Board's 2008 decision in petitions for writ of habeas corpus filed in the California Court of Appeal and California Supreme Court.  *Id.*, Exs. 3, 5.  The California Court of Appeal denied petitioner's due process claim with citations to *In re Lawrence*, 44 Cal.4th 1181, 1212 (2008) and *In re Shaputis* 44 Cal.4th 1241, 1254-161 (2008), and denied his ex post facto claim with citations to Cal. Penal Code § 3041, *In re Duarte*, 143 Cal.App.3d 943, 946 (1983), and *In re Seabock*, 140 Cal.App.3d 29, 41 (1983).  *Id.*, Ex. 4.  The California Supreme Court summarily denied all of petitioner's claims.  *Id.*, Ex. 6.

---

[2] *See Valerio v. Boise Cascade Corp.*, 80 F.R.D. 626, 635 n.l (N.D. Cal. 1978) (judicial notice may be taken of court records), *aff'd*, 645 F.2d 699 (9th Cir. 1981).

**II.  Standards for a Writ of Habeas Corpus**

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the  Supreme Court and nevertheless arrives at different result.  *Early v. Packer*, 537 U.S. 3, 7 (2002) (*citing Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)).

Under the  "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.  *Williams*, 529 U.S. at 413.  A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be

1  unreasonable."  *Id.* at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 75

2  (2003) (internal citations omitted) (it is "not enough that a federal habeas court, in its

3  independent review of the legal question, is left with a 'firm conviction' that the state court was

4  'erroneous.'").  "A state court's determination that a claim lacks merit precludes federal habeas

5  relief so long as 'fairminded jurists could disagree' on the correctness of the state court's

6  decision."  *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).

7  **III.  Petitioner's Claims**

8      **A.  Due Process**

9        Petitioner's first claim is that the Board's 2008 decision finding him unsuitable for parole

10  violated his federal right to due process because it was not based on "some evidence" that he

11  posed a current danger to society if released from prison.  Pet. at 5, 30-36.

12        The Due Process Clause of the Fourteenth Amendment prohibits state action that

13  deprives a person of life, liberty, or property without due process of law.  A litigant alleging a

14  due process violation must first demonstrate that he was deprived of a liberty or property interest

15  protected by the Due Process Clause and then show that the procedures attendant upon the

16  deprivation were not constitutionally sufficient.  *Kentucky Dep't of Corrections v. Thompson,*

17  490 U.S. 454, 459-60 (1989).

18        A protected liberty interest may arise from either the Due Process Clause of the United

19  States Constitution "by reason of guarantees implicit in the word 'liberty,'" or from "an

20  expectation or interest created by state laws or policies."  *Wilkinson v. Austin*,  545 U.S. 209, 221

21  (2005) (citations omitted).  *See also Board of Pardons v. Allen*, 482 U.S. 369, 373 (1987).  The

22  United States Constitution does not, of its own force, create a protected liberty interest in a

23  parole date, even one that has been set.  *Jago v. Van Curen*, 454 U.S. 14, 17-21 (1981);

24  *Greenholtz v. Inmates of Neb. Penal*, 442 U.S. 1, 7 (1979) (There is "no constitutional or

25  inherent right of a convicted person to be conditionally released before the expiration of a valid

26  sentence."); *see also Hayward v. Marshall*, 603 F.3d 546, 561 (9th Cir. 2010) (en banc).

1    However, "a state's statutory scheme, if it uses mandatory language, 'creates a presumption that

2    parole release will be granted' when or unless certain designated findings are made, and thereby

3    gives rise to a constitutional liberty interest." *Greenholtz*, 442 U.S. at 12).  *See also Allen*, 482

4    U.S. at 376-78.

5          California's parole scheme[3] gives rise to a liberty interest in parole protected by the

6    federal due process clause.  *McQuillion v. Duncan*, 306 F.3d 895, 902-03 (9th Cir. 2002)

7    ("California's parole scheme gives rise to a cognizable liberty interest in release on parole."); *see*

8    *Swarthout v. Cooke*, No. 10-333, 562 U.S. ___, 2011 U.S. LEXIS 1067, *5-6 (Jan. 24, 2011)

9    (per curiam) (stating that the Ninth Circuit's determination that California's parole law creates a

10   liberty interest protected by the federal due process clause "is a reasonable application of our

11   cases.").  However, the United States Supreme Court has held that correct application of

12   California's "some evidence" standard is not required by the federal Due Process Clause.

13   *Swarthout*, 2011 WL 197627, at *2.  Rather, this court's review is limited to the narrow question

14   of whether the petitioner has received adequate process for seeking parole. *Id.* at *3.  ("Because

15   the only federal right at issue is procedural, the relevant inquiry is what process [petitioner]

16   received, not whether the state court decided the case correctly.")  Adequate process is provided

17   when the inmate is allowed a meaningful opportunity to be heard and a statement of the reasons

18   why parole was denied.  *Id.* at **2-3 (federal due process satisfied where petitioners were

19   "allowed to speak at their parole hearings and to contest the evidence against them, were

20   afforded access to their records in advance, and were notified as to the reasons why parole was

21   denied"); *see also Greenholtz*, 442 U.S. at 16.

22         Here, the record reflects that petitioner was present at the 2008 parole hearing, that he

23   participated in the hearing, and that he was provided with the reasons for the Board's decision to

24

---

25       [3] In California, a prisoner is entitled to release on parole unless there is "some evidence"

26  of his or her current dangerousness.  *In re Lawrence*, 44 Cal.4th 1181, 1205-06, 1210 (2008); *In re Rosenkrantz*, 29 Cal.4th 616, 651-53 (2002).

1  deny parole.  Pursuant to *Swarthout*, this is all that due process requires.  Accordingly, petitioner

2  is not entitled to relief on his due process claim.

3  **B.  Ex Post Facto**

4  In claims Two and Three, petitioner argues that the Board's 2008 decision finding him

5  unsuitable for parole violated the Ex Post Facto Clause.

6  Petitioner was convicted of first-degree murder and sentenced to life imprisonment under

7  California's Indeterminate Sentencing Law (ISL) in 1976.  In 1977, California repealed the ISL

8  and enacted the current Determinate Sentencing Law (DSL).  Petitioner has been considered for

9  parole under DSL guidelines since that time and has been found unsuitable for release at all

10  suitability hearings conducted after his parole date was rescinded in 1987.  Petitioner argues that

11  the Board violated the Ex Post Facto Clause when it found him unsuitable for parole based on

12  the DSL guidelines and not on the ISL guidelines.  He contends that under ISL standards he

13  would have been released by now.[4]  Petitioner also argues that, since the date of his conviction,

14

15      [4]  Under the ISL, courts were required to sentence individuals convicted of a crime to
16  state prison for the range prescribed by law, but were prohibited from establishing the length of
    time within the statutory range that the individual would serve.  "Responsibility for determining
17  the actual length of time within the statutory maxima and minima the convicted person [was] to
    serve in prison and/or on parole [was] vested with the Adult Authority. . . ."  *In re Rodriguez*, 14
18  Cal.3d 639, 645 (1975).  After enactment of the DSL in 1977, California Penal Code § 1168
    provided (and now provides):

19
            (a)  Every person who commits a public offense, for which any
20          specification of three time periods of imprisonment in any state
            prison is now prescribed by law or for which only a single term of
21          imprisonment in state prison is specified shall, unless such
            convicted person be placed on probation, a new trial granted, or
22          the imposing of sentence suspended, be sentenced pursuant to
            Chapter 4.5 (commencing with section 1170) of Title 7 of Part 2.
23
            (b)  For any person not sentenced under such provision, but who is
24          sentenced to be imprisoned in the state prison, including
            imprisonment not exceeding one year and one day, the court
25          imposing the sentence shall not fix the term or duration of the
            period of imprisonment.
26

1  the rules relating to parole suitability have been altered to the detriment of prisoners like himself

2  who are seeking release on parole, and that retroactive application of the new rules to him have

3  created a significant risk that he has served a longer sentence than he would have served under

4  the prior law.  Pet. at 7, 35-47.  In essence, petitioner is arguing that application of the current

5  parole regulations to him violates the Ex Post Facto Clause.

6         The Constitution provides that "No State shall . . . pass any . . . ex post facto Law."  U.S.

7  Const. art. I, § 10.  A law violates the Ex Post Facto Clause of the United States Constitution if

8  it:  (1) punishes as criminal an act that was not criminal when it was committed; (2) makes a

9  crime's punishment greater than when the crime was committed; or (3) deprives a person of a

10  defense available at the time the crime was committed.  *Collins v. Youngblood*, 497 U.S. 37, 52

11  (1990).  The Ex Post Facto Clause "is aimed at laws that retroactively alter the definition of

12  crimes or increase the punishment for criminal acts."  *Himes v. Thompson*, 336 F.3d 848, 854

13  (9th Cir. 2003) (quoting *Souch v. Schaivo*, 289 F.3d 616, 620 (9th Cir. 2002)).  *See also Cal.*

14  *Dep't of Corr. v. Morales*, 514 U.S. 499, 504 (1995).  The Ex Post Facto Clause is also violated

15  if: (1) state regulations have been applied retroactively to a defendant; and (2) the new

16  regulations have created a "sufficient risk" of increasing the punishment attached to the

17  defendant's crimes.  *Himes*, 336 F.3d at 854.  Not every law that disadvantages a defendant is a

18  prohibited ex post facto law.  The retroactive application of a change in state parole procedures

19  violates ex post facto only if there exists a "significant risk" that such application will increase

20  the punishment for the crime.  *See Garner v. Jones*, 529 U.S. 244, 259 (2000).

21         Here, the Board's application of the DSL guidelines did not increase petitioner's

22  sentence: petitioner's sentence of seven years to life carries no guaranteed parole date but rather

23  carries with it the potential that he could serve the entire term.  Further, any changes between

24  ISL and DSL standards of parole do not change the definition of the crime nor increase the

25  punishment for murder because "the DSL guidelines require consideration of the same criteria as

26  did the ISL."  *Connor v. Estelle*, 981 F.2d 1032, 1034 (9th Cir. 1992).  Accordingly, the

1   application of the DSL parole-suitability guidelines to prisoners sentenced under the ISL does

2   not violate the federal constitutional prohibition against ex post facto laws.  *Id.*  The California

3   Supreme Court has held that a prisoner sentenced under the ISL is entitled to have his release

4   date calculated under either the ISL or DSL procedures, whichever is more beneficial.  *See In re*

5   *Stanworth*, 33 Cal.3d 176 (1982).  Accordingly, petitioner is not disadvantaged by application of

6   either standard.

7          The Ninth Circuit, district courts within the Ninth Circuit, and California state courts

8   have all rejected Ex Post Facto arguments similar to those petitioner raises here.  These courts

9   reason that the enactment of the DSL did not alter the relevant criteria for determining parole

10  suitability under the Indeterminate Sentencing Law ("ISL"), and that, therefore, the application

11  of DSL standards to prisoners sentenced under the ISL does not violate the Ex Post Facto

12  Clause.  *See*, *e.g.*, *Barker v. Board of Prison Terms*, No. 07-15100, 2010 WL 2961266, at *1 (9th

13  Cir. July 23, 2010); *Jones v. Calif. Bd. of Prison Terms*, 239 Fed. Appx 372 (9th Cir. 2007)

14  (petitioner's constitutional challenges to application of DSL standards to parole proceedings "are

15  foreclosed by this court's decision in *Connor v. Estelle*" ); *Baker v. Kramer*, No. CIV S-08-0311

16  FCD DAD P, 2010 WL 1027537, at *13 (E.D. Cal. Mar.18, 2010), *adopted*, 2010 WL 1795862

17  (E.D. Cal. May 4, 2010); *Delaplane v. Marshall*, No. CV 08-2306-JFW (MAN), 2009 WL

18  3806261, at *16 (C.D. Cal. Nov.12, 2009); *In re Duarte*, 143 Cal.App.3d 943, 951 (1983); *In re*

19  *Seabock*, 140 Cal.App.3d 29, 40 (1983).  Petitioner has not cited any United States Supreme

20  Court authority supporting the Ex Post Facto arguments that he raises in the instant petition.  *See*

21  28 U.S.C. § 2254(d).

22         Petitioner argues he can demonstrate that the Board's reliance in 2008 on changed parole

23  statutes resulted in a "significant risk" that he would suffer increased punishment for his crime

24  because he was found suitable for parole under earlier standards but has failed to obtain a parole

25  date under current standards.  This argument is a non sequitur.  The parole date that petitioner

26  was given in 1984 was later rescinded because he committed a disciplinary offense, thereby

9

1  demonstrating that he was no longer suitable for parole.  Petitioner did not lose his parole date

2  because of the Board's reliance on regulations promulgated under the DSL.  For this reason, the

3  fact that petitioner was found suitable for parole in 1984 has no bearing on whether the Board

4  violated the Ex Post Facto Clause when it found him unsuitable in 2008.

5        Petitioner cites *Nulph v. Faatz*, 27 F.3d 451 (9th Cir. 1994) and *Brown v. Palmateer*, 379

6  F.3d 1089, 1091 (9th Cir. 2004) in support of his Ex Post Facto claims.  Pet. at 42.  Those cases

7  recognized that "if the new law is not disadvantageous to defendants in general, an individual

8  will satisfy the detriment requirement [of an ex post facto challenge] if he shows that it can 'be

9  said with assurance' that he would have received less severe punishment under the prior

10 scheme."  *Nulph*, 27 F.3d at 456.  Petitioner has failed to make that showing.  In any event,

11 *Brown* and *Nulph* involved challenges to two different Oregon laws, whereas the instant case

12 involves a challenge to California laws.  These cases are therefore distinguishable on that basis.

13       Petitioner also complains that California Penal Code § 3041.5 has been amended several

14 times since the date of his conviction to allow for longer periods of time between parole

15 suitability hearings.  Pet. at 40, n.1.  Ex Post Facto challenges to those amendments have all been

16 rejected.  *See Morales*, 514 U.S. at 509 (1981 amendment to Cal. Penal Code § 3041.5, which

17 increased maximum deferral period of parole suitability hearings to five years did not violate the

18 Ex Post Facto Clause because it simply altered the method of setting a parole release date and

19 did not create a meaningful "risk of increasing the measure of punishment attached to the

20 covered crimes"); *Watson v. Estelle*, 886 F.2d 1093, 1097-98 (9th Cir. 1989) (not a violation of

21 the Ex Post Facto Clause to apply § 3041.5(b)(2)(A) to prisoners sentenced to life imprisonment

22 prior to the implementation of California's Determinate Sentence Law in 1977); *Clifton v.*

23 *Attorney General Of the State of California*, 997 F.2d 660, 662 n.1 (9th Cir. 1993) (same).  *See*

24 *also Garner v. Jones,* 529 U.S. 244, 249 (2000) (upholding Georgia's change in the frequency of

25 ////

26 ////

1  parole hearings for prisoners serving life sentences, from three to eight years, in an action

2  brought pursuant to 42 U.S.C. § 1983).[5]

3       In light of the above, the state court's rejection of petitioner's Ex Post Facto claims was

4  neither contrary to, nor an unreasonable application of, controlling principles of United States

5  Supreme Court precedent. Therefore, petitioner is not entitled to habeas relief on those claims.

6  **IV.  Request for Evidentiary Hearing**

7       Petitioner requests an evidentiary hearing on "any disputed facts."  Pet. at 48.

8       Pursuant to 28 U.S.C. § 2254(e)(2), an evidentiary hearing is appropriate under the

9  following circumstances:

10            (e)(2) If the applicant has failed to develop the factual basis of a
              claim in State court proceedings, the court shall not hold an
11            evidentiary hearing on the claim unless the applicant shows that-

12                 (A) the claim relies on-

13                 (I) a new rule of constitutional law, made retroactive to cases on
                   collateral review by the Supreme Court, that was previously
14                 unavailable; or

15                 (ii) a factual predicate that could not have been previously
                   discovered through the exercise of due diligence; and
16
                   (B) the facts underlying the claim would be sufficient to establish
17                 by clear and convincing evidence that but for constitutional error,
                   no reasonable fact finder would have found the applicant guilty of
18                 the underlying offense[.]

19       Under this statutory scheme, a district court presented with a request for an evidentiary

20  hearing must first determine whether a factual basis exists in the record to support a petitioner's

21  claims and, if not, whether an evidentiary hearing "might be appropriate."  *Baja v. Ducharme*,

22  _____

23       [5]  Recently the Ninth Circuit overturned a district court decision granting preliminary
     injunctive relief to plaintiffs in a class action seeking to prevent the Board from enforcing the
24   increased deferral periods established by a recent amendment to Cal. Penal Code § 3041.5
     (Marsy's Law).  *Gilman v. Schwarzenegger*, ___ F.3d ___, No. 10-15471, 2011 WL 198435 (9th
25   Cir. Jan. 24, 2011).  The court concluded that plaintiffs had failed to demonstrate a significant
     risk that their incarceration would be prolonged by application of Marsy's Law, and thus found
26   that plaintiffs had not established a likelihood of success on the merits of their ex post facto
     claim.

1  187 F.3d 1075, 1078 (9th Cir. 1999).  *See also Earp v. Ornoski*, 431 F.3d 1158, 1166 (9th Cir.

2  2005); *Insyxiengmay v. Morgan*, 403 F.3d 657, 669-70 (9th Cir. 2005).  A petitioner requesting

3  an evidentiary hearing must also demonstrate that he has presented a "colorable claim for relief."

4  *Earp*, 431 F.3d at 1167 (citing *Insyxiengmay*, 403 F.3d at 670, *Stankewitz v. Woodford*, 365 F.3d

5  706, 708 (9th Cir. 2004) and *Phillips v. Woodford*, 267 F.3d 966, 973 (9th Cir. 2001)).  To show

6  that a claim is "colorable," a petitioner is "required to allege specific facts which, if true, would

7  entitle him to relief."  *Ortiz v. Stewart*, 149 F.3d 923, 934 (9th Cir. 1998) (internal quotation

8  marks and citation omitted).

9        The court concludes that no additional factual supplementation is necessary in this case

10  and that an evidentiary hearing is not appropriate with respect to the claims raised in the instant

11  petition.  The facts alleged in support of these claims, even if established at a hearing, would not

12  entitle petitioner to federal habeas relief.  Therefore, petitioner's request for an evidentiary

13  hearing should be denied.

14  **V. Conclusion**

15        Accordingly, IT IS HEREBY RECOMMENDED that:

16        1.  Petitioner's request for an evidentiary hearing be denied;

17        2.  Petitioner's application for a writ of habeas corpus be denied; and

18        3.  The Clerk be directed to close the case.

19        These findings and recommendations are submitted to the United States District Judge

20  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

21  after being served with these findings and recommendations, any party may file written

22  objections with the court and serve a copy on all parties.  Such a document should be captioned

23  "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

24  within the specified time may waive the right to appeal the District Court's order.  *Turner v.*

25  *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

26        In any objections he elects to file, petitioner may address whether a certificate of

1  appealability should issue in the event he files an appeal of the judgment in this case.  *See* Rule

2  11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a

3  certificate of appealability when it enters a final order adverse to the applicant); *Hayward v.*

4  *Marshall*, 603 F.3d 546 (9th Cir. 2010) (en banc) (prisoners are required to obtain a certificate of

5  appealability to review the denial of a habeas petition challenging an administrative decision

6  such as the denial of parole by the parole board).

7  DATED:  March 23, 2011.

8

9  EDMUND F. BRENNAN
   UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26